U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 MAR 25  PM 12: 30

CLERK

BY_____ *LG*
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ARNALDO GREGORIO ALAY        )
AGUILAR,                     )
                             )
    Petitioner,              )
                             )
    v.                       )        Case No. 2:26-cv-92
                             )
DONALD J. TRUMP et al.,      )
                             )
    Respondents.             )

## ORDER ON PETITION FOR HABEAS CORPUS
(Doc. 1)

Petitioner Arnaldo Gregorio Alay Aguilar, a resident of North Carolina and a citizen of Ecuador, was detained by U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE") on March 5, 2026, when he inadvertently followed his GPS directions to the U.S.-Canadian Border while driving for work as a long-haul truck driver. (Doc. 1 ¶ 3.) Canadian border patrol agents would not let him back up the truck for safety reasons, so he was forced to cross through the port of entry, make a U-turn, and report to U.S. CBP for inspection. (*Id.* ¶¶ 33–34.) Mr. Alay Aguilar was detained at the border for several hours before being transferred to Northwest State Correctional Facility in Swanton, Vermont. (*Id.* ¶ 1, 40.)

On March 23, Mr. Alay Aguilar filed a habeas petition challenging his detention on the grounds that Defendants have failed to articulate a reason for his re-detention, in violation of his rights under the Fifth Amendment and in violation of the Administrative Procedures Act. (Doc. 1.) In the petition, he requested his immediate release or, in the alternative, a bond hearing before an immigration judge. At a hearing on March 25, 2026, the court granted Mr. Alay

Aguilar's petition and ordered his immediate release. This Order memorializes the court's ruling from the bench.

The facts in this case are not in dispute. Mr. Alay Aguilar entered the United States without inspection in November 2023. (Doc. 8-1.) He encountered U.S. immigration officials and was granted release on his own recognizance on November 6, 2023. (Doc. 8-2.) His conditions of release included reporting for any hearings in his immigration case, surrendering for removal if ordered removed, reporting to ICE for check-ins on a regular basis, and not changing his place of residence without first securing permission from ICE. (*Id.*) Mr. Alay Aguilar has complied with all of these conditions, timely filed an application for asylum, received work authorization, obtained a commercial driver's license, and actively pursued his immigration case. (Doc. 1 ¶ 2.) He has no criminal history in the United States or any other country, and he has a serious girlfriend with legal permanent resident status in North Carolina. (*Id.* ¶ 28.)

The Government has offered no justification for Mr. Alay Aguilar's re-detention after his initial release in 2023, other than that the Government has reinterpreted the detention provisions in the Immigration and Nationality Act ("INA") and now views him as subject to mandatory detention under 8 U.S.C. § 1225(b)(2) rather than discretionary detention under § 1226(a). (*See* Doc. 8.) This court has previously considered whether § 1225(b)(2) or § 1226(a) governs the detention of noncitizens who, like Mr. Alay Aguilar, entered the United States without admission or inspection but have been living in the United States.[1] In each case, the court has concluded

---

[1] *See, e.g.*, *Lopez v. Trump*, No. 25-cv-863, 2025 WL 3264151 (D. Vt. Nov. 17, 2025); *Lala Inamagua v. Hale*, No. 25-cv-892, (D. Vt. Dec. 1, 2025), ECF No. 19; *Cabrera-Lopez v. Hyde*, No. 26-cv-17, 2026 WL 540131 (D. Vt. Feb. 26, 2026); *Yupangui v. Hale*, No. 25-cv-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); *Ruiz v. Trump*, No. 26-cv-12, 2026 WL 323254 (Feb. 6, 2026); *Patin Patin v. Trump*, No. 26-cv-71 (D. Vt. Mar. 17, 2025).

that § 1226(a) governs the detention of noncitizens in Mr. Alay Aguilar's position and that, as a result, they are statutorily entitled to a bond hearing before an immigration judge at which the judge assesses their flight risk and danger to the community.

In several of its past cases concerning the debate between § 1225(b) and § 1226(a), the court has concluded that the appropriate remedy was a bond hearing in immigration court, as provided for by § 1226(a). The court has reached that conclusion because it respects the immigration court's particular expertise in immigration issues and its role in making bond determinations as part of its regular duties.

In this case, the court concluded that Mr. Alay Aguilar's immediate release at the March 26 hearing was the appropriate remedy, given the nature of the constitutional violations in this case. In addition to violating Mr. Alay Aguilar's statutory rights, his re-detention absent a change in circumstances—and without an individualized bond hearing—violated his substantive and procedural due process rights. In assessing a procedural due process violation, the court applies the balancing test from *Mathews v. Eldridge*, which considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. 319, 335 (1976).

Here, all factors point to a serious violation of Mr. Alay Aguilar's constitutional rights. The private interest in this case is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). That interest is heightened by the fact that Mr. Alay Aguilar has developed significant ties to the

3

United States. *See DHS v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (noting that "[noncitizens] who have established connections in this country have due process rights in deportation proceedings").

As for the risk of an erroneous deprivation of Mr. Alay Aguilar's freedom, this case stands out among the habeas cases this court has recently seen. The Government itself made the determination in November 2023 that Mr. Alay Aguilar should be released on his own recognizance, subject to certain conditions. He has met every single one of those conditions and clearly poses no risk to the community. He has a pending asylum application and work authorization. Nothing about Mr. Alay Aguilar or his circumstances has changed to warrant a change in the Government's assessment of his flight risk or dangerousness, and his history in the United States only confirms that the Government made the correct decision in November 2023. Redetaining Mr. Alay Aguilar now, with no pre-deprivation process to determine his flight risk or danger to the community, essentially guarantees an erroneous deprivation of his rights.

As to the Government's interest, the court acknowledges that the Government has a legitimate interest in ensuring that noncitizens appear at their immigration proceedings and in preventing noncitizens from perpetrating harm in their communities during the pendency of their removal proceedings. But the facts of this case demonstrate that detention is not necessary to achieve those goals with respect to Mr. Alay Aguilar. Regarding the burden on the Government, providing pre-deprivation hearings before re-detaining individuals whom the Government has already identified as good candidates for bail, and where the circumstances have not changed in any way that would affect that assessment, would "do nothing to undercut [the Government's] interests" and would impose little administrative burden. *Black v. Decker*, 103 F.4th 133, 153

4

(2d Cir. 2024). Refraining from re-detaining such individuals altogether would significantly *reduce* the burden on the Government.

Because Mr. Alay Aguilar's detention was clearly an erroneous deprivation of his liberty, ordering a bond hearing in immigration court would have furthered no legitimate governmental interest and would only have prolonged the constitutional injury in this case. Immediate release was the appropriate remedy.

Finally, the court notes that, due to his detention, Mr. Alay Aguilar will not be able to attend his Master Calendar Hearing at the Charlotte, North Carolina Immigration Court today. Mr. Alay Aguilar's counsel represented at today's hearing that ICE failed to update Mr. Alay Aguilar's address following his detention, such that the North Carolina Immigration Court is not aware of the need to postpone his hearing. Missing an immigration court hearing can have serious consequences, including issuance of an order of removal. The court finds that Mr. Alay Aguilar's absence from his March 26, 2025 master calendar hearing at 1:00 p.m. EDT is due to circumstances outside his control for which he cannot be faulted. He was released from custody in Burlington, Vermont at approximately 10:30 a.m. EDT on March 26, 2025, and he needed to obtain his wallet and other personal possessions before beginning his return trip to North Carolina. His appearance in court in North Carolina at 1:00 p.m. is therefore a physical impossibility and should be excused.

Dated at Burlington, in the District of Vermont, this 25th day of March, 2026.

Geoffrey W. Crawford, Judge
United States District Court